## COMMONWEALTH *vs.* EDWARD F. RICHARDSON.

Suffolk.    November 21, 1899. — January 8, 1900.

Present: HOLMES, C. J., MORTON, BARKER, HAMMOND, & LORING, JJ.

*Indictment — Exceptions — Habitual Criminal — Continuous Imprisonment under previous Commitments.*

Exceptions to the refusal to give rulings requested, which relate to the duty of the jury upon all the evidence, will be overruled, if the bill of exceptions states no evidence.

It is no objection to the sufficiency of an indictment under the habitual criminal act, St. 1887, c. 435, that the sentence imposed upon the second previous conviction alleged in the indictment took effect from the expiration of the sentence imposed upon the first previous conviction alleged, so that there was no interval of liberty between the two terms of imprisonment.

INDICTMENT, in two counts, charging the defendant in the first count with breaking and entering the shop of one Andrews in the night time, with intent to commit larceny; and in the second count with receiving stolen property, and also with being an habitual criminal, — two convictions, sentences, and commitments to the State prison of this Commonwealth for terms of not less than three years each being set forth in the indictment.

In the Superior Court, before the jury were empanelled, the defendant filed a motion to quash the indictment. *Blodgett*, J., overruled the motion; and the defendant excepted. At the trial the jury returned a verdict of guilty; and the defendant alleged exceptions. The facts appear in the opinion.

*D. H. Coakley & G. T. Emerson*, for the defendant.

*J. D. McLaughlin*, Second Assistant District Attorney, for the Commonwealth.

BARKER, J. The defendant's bill of exceptions states no evidence, while the requests for rulings, which he now contends in his brief should have been given, relate to the duty of the jury upon all the evidence. Because no evidence is stated, this exception is overruled. His exception to the order overruling his motion to quash the indictment raises the question of its sufficiency, and of the construction of St. 1887, c. 435, he having been convicted and sentenced as an habitual criminal under that act.

The first section of the statute is as follows: " Whoever has been twice convicted of crime, sentenced and committed to prison, in this or any other State, or once in this and once at least in any other State, for terms of not less than three years each, shall, upon conviction of a felony committed in this State after the passage of this act, be deemed to be an habitual criminal, and shall be punished by imprisonment in the State prison for twenty-five years: provided, however, that if the person so convicted shall show to the satisfaction of the court before which such conviction was had that he was released from imprisonment upon either of said sentences, upon a pardon granted on the ground that he was innocent, such conviction and sentence shall not be considered as such under this act."

The two previous convictions, sentences, and commitments to prison alleged in the indictment were in this State.    The first conviction was at Cambridge, in June, 1890, and on this he was sentenced on June 30, 1890, and on the same day was committed to the State prison in pursuance of the sentence.    Pending the execution of this sentence he was convicted of another crime in Boston in July, 1890, and on July 31, 1890, was sentenced to imprisonment for another term, this sentence to take effect from and after the expiration of the first sentence, and on August 1, 1890, he was committed to the State prison in pursuance of the last sentence.

On July 15, 1898, he was discharged from the State prison, having served both of these sentences under the law.    The new crimes, which the indictment alleges the prisoner to have committed, are charged to have been committed on February 25, 1899, and it appears from the record that he was found guilty of one of them by the verdict, which also found that before the commission of that offence he had been convicted of crime twice before, and sentenced and committed to prison in this State for terms of imprisonment of not less than three years each.

The charges of the indictment bring the case within the language of the statute taken literally.    The defendant is charged with having been convicted twice, sentenced twice, and twice committed to prison for terms of not less than three years each ; and with thereafter committing another felony.    But he contends that the words of the statute are not to be taken literally, and mean

that the second previous conviction, sentence, and imprisonment, to meet the true requirement of the statute, must have been for an offence committed after he had served the sentence imposed upon his first conviction, and that to be deemed an habitual criminal he must be shown to have committed an offence after having been twice subjected to discipline by imprisonment, with an interval of liberty between the two terms. In support of this contention he urges that penal statutes are to be construed strictly, in favor of liberty; that all words in the statute must be given reasonable force and meaning, and that the intent must be obtained from a consideration not only of the whole statute, but of all other legislation upon analogous matters; and he particularly relies upon the statement of the purpose and principle of such enactments contained in the opinion of the court in *Commonwealth* v. *Daley*, 4 Gray, 209. The decision in that case was that the second conviction, which, under St. 1852, c. 322, § 7, required an increased penalty, must be for an offence committed since the time of the alleged previous conviction. The opinion, after referring to the fact that provisions had been in force by which persons convicted of offences punished by imprisonment in the State prison were liable to additional punishment upon each successive sentence, says: " The sole object of all such penal enactments is to deter persons from the repeated commission of similar offences, by imposing additional and severer penalties for each successive violation of law; that is, to punish second offences more severely than first, and third more severely than second; and thus, by aggravating the punishment for each successive violation of law, to prevent persons from becoming old and hardened offenders"; and, further, that the principle on which aggravated penalties are prescribed " is that the offender is first to incur the lighter penalty, and be thereby subjected to the discipline which penal enactments are intended to exert upon the violators of law, before he can be liable to incur the more aggravated punishment." The statutes referred to by citations in the opinion are St. 1833, c. 85, cited as c. 83, and Rev. Sts. c. 133, § 16. It is to be noticed that the provisions of Rev. Sts. c. 133, § 16, were part of an amendment made by St. 1836, c. 4, § 17, to continue in force the provisions of St. 1833, c. 85; and also that St. 1852, c. 322, § 7, which the court was

construing in the opinion from which we have quoted, St. 1833, c. 85, and Rev. Sts. c. 133, §§ 16, 17, and 18, each provided increasingly aggravated penalties upon second and third convictions, while the present statute provides no aggravated penalty for second convictions.   There is nothing in the opinion to justify the contention that an aggravated penalty for a third offence committed after two consecutive terms of imprisonment imposed because of two previous distinct convictions is inconsistent with our system of penal legislation.   If a person has broken the law for a third time after having been subjected twice to discipline by imprisonment under penal enactments, the Legislature may say that such a third offence shall fix his status as an habitual criminal, notwithstanding the fact that his two terms of discipline were continuous.

A more full investigation than that made in the opinion in *Commonwealth* v. *Daley* shows that the intervention of a period of liberty between terms of imprisonment has not been uniformly a feature of our system of aggravated penalties for repeated offences; and it cannot reasonably be contended to be an indispensable feature of such a system if the Legislature sees fit to order otherwise.

Since the year 1804 a person convicted at one term of three distinct larcenies has been subjected to aggravated punishment as a common and notorious thief.   St. 1804, c. 143, § 3.   *Ross's case*, 2 Pick. 165, 170.   Rev. Sts. c. 126, § 19.   Gen. Sts. c. 161, § 22.   Pub. Sts. c. 203, § 24.   All of these statutes negative the idea that previous discipline by punishment is a prerequisite to liability to the aggravated penalty due to persistence in crime.

A system of aggravated penalties for persons convicted of crime after having been sentenced to imprisonment in a State prison was inaugurated here in the year 1817, and continued in force with modifications until the year 1853.   The statutes are St. 1817, c. 176, §§ 5, 6;   St. 1827, c. 118, §§ 19, 20;   St. 1832, c. 73;   St. 1833, c. 85;   Rev. Sts. c. 133, § 13, as originally enacted, and c. 144, §§ 34–36;   St. 1836, c. 4, §§ 17, 20–22;   St. 1843, c. 80;   St. 1853, c. 375.   Cases arising under this system were decided by this court in *Ross's case*, 2 Pick. 165;   *Commonwealth* v. *Phillips*, 11 Pick. 28;   *Ex parte Seymour*, 14 Pick. 40;   *Ex parte White*, 14 Pick. 90;   *Ex parte Stevens*, 14 Pick.

94; *Commonwealth* v. *Evans*, 16 Pick. 448; *Commonwealth* v. *Getchell*, 16 Pick. 452; *Commonwealth* v. *Mott*, 21 Pick. 492; *Wilde* v. *Commonwealth*, 2 Met. 408; *Plumbly* v. *Commonwealth*, 2 Met. 413; *Evans* v. *Commonwealth*, 3 Met. 453; *Phillips* v. *Commonwealth*, 3 Met. 588.

The scheme of punishment for repetition of offences enacted by St. 1817, c. 176, §§ 5, 6, was that whenever a person convicted of crime punishable by confinement to hard labor for a term of years had " been before sentenced to a like punishment," whether pardoned or not, he should be sentenced to solitary imprisonment not exceeding thirty days, and confinement to hard labor for not more than seven years, in addition to the punishment prescribed by law for the offence for which he was then tried; and if he had " been before twice convicted and sentenced in manner aforesaid," he should be punished by confinement to hard labor for life, and by solitary confinement not exceeding thirty days. As at the time of the trial it might not be known whether the person charged had been convicted before, it was made the duty of the officers of the State prison, when it appeared that a convict received there under sentence had been before so sentenced, to make representation thereof to the Attorney or Solicitor General, who by information or other legal process should make the same known to this court, whose justices should try the charge contained in the information, and, if it appeared to be true, should award against the convict the additional punishment so provided. The statute which enacted these provisions contained others concerning the regulation of the State prison. These regulations were revised by St. 1827, c. 118, which altered and amended §§ 5 and 6 of St. 1817, c. 176, and continued them in force as so amended. The chief alterations were the limitation to the warden of the duty to make the representation that a convict had been sentenced before; the placing upon the county attorney for the county of Suffolk of the duty of bringing the information, and the transfer of the jurisdiction over such informations to the municipal court of the city of Boston. St. 1827, c. 118, §§ 19, 20, 27. The question whether the convictions at one and the same term of court were two convictions within the meaning of these statutes, arose both in this court and in the municipal court, the latter taking the view that they were not, and this court deciding

on March 14, 1831, that two convictions at the same term were two convictions within the meaning of the statute. *Commonwealth* v. *Phillips*, 11 Pick. 28, 34. *Ex parte Seymour*, 14 Pick. 40. *Phillips* v. *Commonwealth*, 3 Met. 588, 591. This decision is inconsistent with the view that an interval of liberty must intervene between the imprisonment for one offence and the commission of the next. It gave rise to St. 1832, c. 73, providing that there should be two several convictions and sentences to the State prison, and two distinct discharges therefrom to bring the party within the provisions of St. 1817, c. 176, and of St. 1827, c. 118, providing for aggravated punishment. But this statute was repealed the next year by St. 1833, c. 85, so that the construction made by this court was ultimately affirmed by the Legislature. The Commissioners' Report on the Revised Statutes, and the Revised Statutes as enacted, ignored the provisions of St. 1833, c. 85. See Rev. Sts. c. 133, § 13 ; c. 144, §§ 34–36. But before the Revised Statutes took effect, the Legislature again interposed by St. 1836, c. 4, §§ 17, 20–22, restoring the substance of the language of St. 1817, c. 176, St. 1827, c. 118, and St. 1833, c. 85, to which this court had given a construction under which previous convictions and sentences only need be shown to render the convict liable to aggravated penalties. The statutes remained unchanged in this respect until finally repealed in 1853. See St. 1843, c. 80 ; St. 1853, c. 375. In the year 1882, this court, dealing with another statute imposing aggravated penalties for repeated offences, Pub. Sts. c. 207, § 27, said, speaking through Morton, C. J., "The object of the statute is to prevent the repeated commission of similar offences by imposing severer penalties for each successive violation of law, and thus to save persons from becoming old and hardened offenders." *Commonwealth* v. *Hughes*, 133 Mass. 496, 497.

As we have seen before, the case of the present defendant is within the letter of the statute. Before he committed the crime for which he is now under sentence as an habitual criminal, he had been convicted twice, and had served out two sentences of imprisonment. Considering with the whole language of the statute the legislation of the Commonwealth upon similar subjects, we think the defendant's case is also within the spirit of

the statute, as he is one who has persisted in crime notwithstanding the discipline to which he has been subjected in consequence of two former convictions and sentences. If, as we do not now find it necessary to consider or to decide, the language of the statute as to a release from imprisonment upon either of his former sentences upon a pardon implies that both of the former sentences must have been served before the commission of the new offence, the implication goes no further, and furnishes no reason for holding that the statute means that there must have been an interval of liberty between the two former terms of imprisonment.

> *Exceptions overruled ; order overruling the motion to quash affirmed.*