# IN THE COURT OF APPEALS OF IOWA

No. 17-0312
Filed August 1, 2018

**CYNTHIA PESCE,**
　　　　Plaintiff-Appellant,

**vs.**

**CITY OF DES MOINES and THE ANIMAL RESCUE LEAGUE OF IOWA, INC.,**
　　　　Defendants-Appellees.
_____

**JAYSEN MCCLEARY,**
　　　　Petitioner,

**vs.**

**IOWA DISTRICT COURT,**
　　　　Respondent.
_____

　　　　Appeal from the Iowa District Court for Polk County, Bradley McCall, Judge.


　　　　Cynthia Pesce appeals the district court's dismissals and reassignments of her seized property claims. Her attorney Jaysen McCleary appeals the imposition of sanctions. **AFFIRMED ON APPEAL. WRIT ANNULLED.**


　　　　Jamie L. Hunter of Dickey & Campbell Law Firm, P.L.C., Des Moines, for appellant.

　　　　Michelle R. Mackel-Wiederanders, Assistant City Attorney, for appellee City of Des Moines.

　　　　Jason M. Casini of Whitfield & Eddy, P.L.C., Des Moines, for appellee The Animal Rescue League of Iowa.

Considered by Vogel, P.J., and Doyle and Bower, JJ.  McDonald, J., takes no part.

**PER CURIAM.**

Cynthia Pesce appeals the district court's actions in reassigning her seized-property claim to a civil matter, dismissing her second seized-property claim, and holding a hearing after she filed a motion to dismiss and notices of appeal. Her attorney, Jaysen McCleary, petitions for writ of certiorari regarding the district court's imposition of sanctions for his actions in the proceeding. We find the district court did not err or abuse its discretion in managing Pesce's seized-property claims or in holding the hearing. We also find the district court did not abuse its discretion in imposing sanctions. Therefore, we affirm the actions of the district court, and we annul the writ of certiorari.

## I. Background Facts and Proceedings

On April 7, 2016, Cynthia Pesce, through her attorney Jaysen McCleary, filed her first Application for Return of Seized Property, naming the City of Des Moines (City) and the Animal Rescue League (ARL) as defendants. According to the application, one of her four dogs allegedly bit someone on March 19. In response, the City took control of all four dogs and placed them in quarantine. When the quarantine period ended on March 29, the City transferred control of the dogs to the ARL, and the ARL refused to return the dogs to Pesce.[1] Pesce sought return of the dogs as seized property under Iowa Code chapters 809 and 809A (2016), and she claimed conversion and constitutional violations. Also on April 7, she requested—and the court granted without a hearing—an "emergency stay," which ordered the City and ARL not to destroy or allow the "dogs to be adopted

---

[1] The City would later assert Pesce failed to promptly retrieve her dogs after the quarantine period had passed resulting in the City transferring the dogs to the ARL.

without further order." McCleary communicated with the ARL about Pesce and the dogs multiple times before filing the petition, but he did not notify them about the application or stay until minutes after the court granted the stay. The court initially accepted the application as a seized-property claim in case number SPCE079882, but it later reassigned the application as a civil claim in case number CVCV051695.

On April 11, the ARL filed a motion seeking to vacate or modify the stay, claiming Pesce had misconstrued the facts and the law. Among its claims, the ARL asserted Pesce failed to provide notice or show why it should not provide notice before requesting the stay, as required by rule. The court initially scheduled a hearing on the matter for May 26. On Pesce's motion, the court allowed McCleary to appear telephonically for the hearing because he was temporarily living outside Iowa. On May 23, Pesce filed a motion to continue the hearing due to illness on the part of McCleary. On May 25, the court continued the hearing until June 2 at 8:00 a.m., and it ordered Pesce to post a bond for the stay. Pesce never posted a bond as ordered.

On the morning of June 1, Pesce filed a second Application for Return of Seized Property. The second application named only the City as a defendant, repeated the factual allegations from the first application, and only sought return of the dogs under section 809A.8 and another stay. The second application also contained a preliminary statement acknowledging the first application "that contained additional actions for relief; however, the additional actions may have caused the court to not recognize the application for seized property." The clerk of court accepted the second application as a seized property case and assigned it to a judge on the criminal docket under case number SPCE080114. That

afternoon, McCleary sent an email to the judge assigned to SPCE080114 to alert her to the filing and ask her to "order the stay before leaving today." Later that day, that judge forwarded McCleary's email to the judge assigned to CVCV051695, who then denied the second application and ordered SPCE080114 closed with the pleadings reassigned to CVCV051695 with the first application.

On June 2 at 7:19 a.m., forty-one minutes before the scheduled start of the hearing, McCleary sent an email to the court and opposing counsel saying he would be fifteen minutes late for the hearing because "among other things" he runs "an animal rescue and yesterday came into possession of a 1 day old male bison." At 7:45 and 7:47, Pesce filed separate notices of appeal for case numbers SPCE079882 and SPCE080114, both of which were signed by McCleary. One notice claimed the "stay order must be obeyed as [the court] has lost jurisdiction to modify or vacate the stay" due to the appeal. At 8:01, one minute after the scheduled start of the hearing, Pesce filed a motion for case number CVCV051695, signed by McCleary, captioned "Motion to Dismiss Without Prejudice the Remaining Claims Pursuant to 1.943 Until the Matters on Appeal Are Decided in SPCE079882 and SPCE080114." At 8:06, McCleary sent another email to the court and opposing counsel:

> I will not be able to attend the hearing today due to an emergency with my one day old bison calf. I apologize to all for the inconvenience, however, the issues involved in the scheduled hearing are now on appeal to the Iowa Supreme Court and the remaining causes of action have been dismissed pursuant to [rule] 1.943 without prejudice and this court lacks jurisdiction to deny this motion as well as the fact this court lacks jurisdiction regarding the matters that are now on appeal before the Iowa Supreme Court.
> If the court believes any matters remain the undersigned requests a continuance for the hearing due to good cause regarding this emergency.

At 8:11, Pesce filed a motion for continuance, signed by McCleary, claiming there are no "matters left for this court to rule on but in case the court disagrees the undersigned requests a continuance of this hearing due to good cause." At 9:30, she filed a notice of appeal for case number CVCV051695, again signed by McCleary.

At the June 2 hearing, the court briefly went on the record soon after 8:00 a.m., recessed to consider McCleary's filings and emails, and went back on the record without McCleary around 8:30. After hearing arguments from the ARL and the City, the court vacated the stay by oral order. On June 6, the court entered a written order noting Pesce "failed to demonstrate good cause for a continuance" and vacating the stay.

On June 15, the ARL filed a motion for sanctions against McCleary on several grounds. Following another hearing, the court granted the sanctions, finding both applications and stay requests were not warranted by existing law or a good faith argument. The court ordered McCleary to pay to the ARL $2688 for the cost of boarding the dogs during the stay and $8392.50 for attorney fees, totaling $11,080.50.

On January 17, 2017, our supreme court issued an order regarding Pesce's dismissals and appeals filed June 2, 2016. A three-justice panel determined Pesce had voluntarily dismissed all of her claims except the seized-property claim, and it determined her appeals are interlocutory and denied them. The panel remanded the case to the district court for further proceedings on the seized-property claim. On January 25, the district court relied on a factually-similar appellate case to

dismiss Pesce's seized-property claim. *Rumsey v. City of Des Moines*, No. 15-1948, 2016 WL 7395733, at *2 (Iowa Ct. App. Dec. 21, 2016) ("The district court aptly determined the city did not seize [the dog] under section 809.1(1)(c) and section 809.5(1) did not provide for the dog's return.").

Pesce now appeals the district court's actions in reassigning her first seized property application, dismissing her second application, and holding a hearing after she filed her dismissal and notices of appeal. McCleary also challenges the order of sanctions via petition for writ of certiorari.

## II. Reassignment of the First Application and Dismissal of the Second Application

Pesce appeals the district court's actions in reassigning her first application for return of seized property and dismissing her second application. When the statutes and rules are silent, the "district court has the inherent authority to manage its docket and calendar," subject to due process limitations. *Spitz v. Iowa Dist. Ct.*, 881 N.W.2d 456, 467 (Iowa 2016). The court may also "consolidate separate actions which involve common questions of law or fact" unless prejudice will result. Iowa R. Civ. P. 1.913. To the extent she argues the court violated her constitutional right to due process by managing her applications, we review the claim de novo. *Id.* at 464. To the extent she argues the court's management of her applications caused her prejudice, we review the claim for abuse of discretion.

Pesce argues reassigning her applications into a civil case triggered "the rules of civil procedure instead of the specific proceedings and timelines that are set forth in chapters 809 and 809A," thus depriving her of the opportunity to have her seized-property claim heard. She continues, "If the City believed that chapters

809 and 809A did not apply in this matter, it could have filed a motion to dismiss, allowed Pesce time to respond, and have a hearing on the issue, at which time the district court could determine whether to dismiss the claim." Yet this is essentially the procedure that occurred. In reassigning the first application, the court retained all of Pesce's claims for consideration in case number CVCV051695. Because the second application merely repeated the seized-property claim from the first application against only one party, the court was able to dismiss the second application while fully addressing the seized-property claim with the first application in case number CVCV051695. The City and the ARL filed motions related to Pesce's claims, and the court responded by scheduling a hearing on the stay— which Pesce sought to continue twice—and providing Pesce with ample time and opportunity to respond. The court ultimately addressed Pesce's filings by honoring her motion to dismiss the non-seized-property claims, vacating the stay after notice and a hearing, and following precedent to dismiss her seized-property claim. Pesce does not point to any way the court's management of her applications affected her due process rights or caused her prejudice. Therefore, the court did not err or abuse its discretion in reassigning her first application or dismissing her second application.

### III. Holding the Hearing

Pesce next appeals the district court's decision to hold a hearing on her claims after she dismissed her petition and filed notices of appeal. To the extent she argues her filings deprived the district court of jurisdiction, we review rulings on legal questions for correction of errors of law. *Fry v. Blauvelt*, 818 N.W.2d 123, 128 (Iowa 2012). Our supreme court determined the notices of appeal were

applications for interlocutory appeal. The district court retains jurisdiction of matters under interlocutory appeal. Iowa R. App. P. 6.104(1)(f) ("The filing of an application for interlocutory appeal does not stay district court proceedings."). Therefore, the court did not err in determining it had jurisdiction to hold a hearing on the claims after Pesce filed the notices of appeal.

To the extent Pesce argues the district should have granted her motion to continue the hearing, "[t]rial courts have broad discretion in deciding whether to grant motions for continuances; absent a clear abuse of this discretion, we will not interfere." *Dep't of Gen. Servs. v. R.M. Boggs Co.*, 336 N.W.2d 408, 410 (Iowa 1983); *see also* Iowa R. Civ. P. 1.911(1) ("A continuance may be allowed for any cause not growing out of the fault or negligence of the movant, which satisfies the court that substantial justice will be more nearly obtained."). McCleary, on behalf of Pesce, had already sought to continue the hearing once. McCleary first notified the court and counsel of his conflict forty-one minutes before the hearing. The conflict arose from McCleary's animal rescue and not his professional responsibilities as an attorney. McCleary continued to send emails and submit filings in the minutes before and after the hearing's scheduled start despite his conflict and despite the prior approval for him to appear telephonically. He finally notified the court and counsel he would not participate in the hearing by sending an informal email six minutes after the scheduled start and by filing the motion for continuance eleven minutes after the scheduled start. The court noted it was "troubled" by McCleary's actions. The City and the ARL were prepared to participate in the hearing as scheduled. Pesce had not posted a bond to cover the ARL's substantial costs in boarding the dogs, and continuing the hearing would

have required the ARL to continue boarding the dogs. Under these facts, the district court did not abuse its discretion in finding Pesce had not shown good cause to continue the hearing.

### IV. Sanctions

Finally, McCleary challenges the district court's order of sanctions against him. "The proper means to review a district court's order imposing sanctions is by writ of certiorari." *Everly v. Knoxville Cmty. Sch. Dist.*, 774 N.W.2d 488, 492 (Iowa 2009). "We review a district court's decision on whether to impose sanctions for an abuse of discretion." *Barnhill v. Iowa Dist. Ct.*, 765 N.W.2d 267, 272 (Iowa 2009). We are bound by the court's factual findings if they are supported by substantial evidence. *Id.*

The ARL claims McCleary violated Iowa Rule of Civil Procedure 1.413(1), which states:

> Counsel's signature to every motion, pleading, or other paper shall be deemed a certificate that: counsel has read the motion, pleading, or other paper; that to the best of counsel's knowledge, information, and belief, formed after reasonable inquiry, it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or cause an unnecessary delay or needless increase in the cost of litigation. . . . If a motion, pleading, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay the other party or parties the amount of the reasonable expenses incurred because of the filing of the motion, pleading, or other paper, including a reasonable attorney fee.

"Compliance with the rule is determined as of the time the paper is filed." *Barnhill*, 765 N.W.2d at 272. "[T]he standard to be used is that of a reasonably competent attorney admitted to practice before the district court." *Id.*

The district court found McCleary violated rule 1.413(1) in filing the first and second applications and accompanying stay requests. The ARL asserts McCleary requested a temporary injunction instead of a stay; but regardless of how the action is characterized, the same rules apply when making the request. *Teleconnect Co. v. Iowa State Commerce Comm'n*, 366 N.W.2d 511, 514 (Iowa 1985) (finding issuance of a bond "before issuance of a stay should be required in these circumstances in the same manner as for an injunction under [current rule 1.508]"). The ARL claims McCleary requested a temporary injunction without providing notice and, as such, he "must certify to the court in writing either the efforts which have been made to give notice to the adverse party . . . or the reason supporting the claim that notice should not be required." Iowa R. Civ. P. 1.1507. McCleary argues he did not request a temporary injunction, and therefore his actions were not subject to rule 1.1507. However, McCleary provides no authority to support his argument that his request for an "emergency stay" was distinct from a temporary injunction and not subject to any prior notice requirement. Furthermore, the ARL raised the notice requirements in response to the first application, which would have alerted a reasonable attorney of the need to provide notice before requesting a near-identical stay with the second application. Therefore, the court did not abuse its discretion in finding McCleary failed to meet the standard of a reasonably competent attorney when he filed the first and second applications and requests for stay in violation of rule 1.413(1).

McCleary also contests the amount of the sanctions. When sanctions are appropriate, our supreme court has provided several factors to determine the amount of sanctions:

a. the good faith or bad faith of the offender;
b. the degree of willfulness, vindictiveness, negligence or frivolousness involved in the offense;
c. the knowledge, experience and expertise of the offender;
d. any prior history of sanctionable conduct on the part of the offender;
e. the reasonableness and necessity of the out-of-pocket expenses incurred by the offended person as a result of the misconduct;
f. the nature and extent of prejudice, apart from out-of-pocket expenses, suffered by the offended person as a result of the misconduct;
g. the relative culpability of client and counsel, and the impact on their privileged relationship of an inquiry into that area;
h. the risk of chilling the specific type of litigation involved;
i. the impact of the sanction on the offender, including the offender's ability to pay a monetary sanction;
j. the impact of the sanction on the offended party, including the offended person's need for compensation;
k. the relative magnitude of sanction necessary to achieve the goal or goals of the sanction;
l. burdens on the court system attributable to the misconduct, including consumption of judicial time and incurrence of juror fees and other court costs;
m. the degree to which the offended person attempted to mitigate any prejudice suffered by him or her;
n. the degree to which the offended person's own behavior caused the expenses for which recovery is sought;
o. the extent to which the offender persisted in advancing a position while on notice that the position was not well grounded in fact or warranted by existing law or a good faith argument for the extension, modification or reversal of existing law; and
p. the time of, and circumstances surrounding, any voluntary withdrawal of a pleading, motion or other paper.

*Barnhill*, 765 N.W.2d at 276–77.

The court awarded $11,080.50 in sanctions, which is the entire amount the ARL sought for its attorney fees and the cost of boarding the dogs. The court found McCleary's "actions in initiating, then abandoning, the claims in this case were the proximate cause of all of the costs and attorney fees incurred by the ARL." The court noted McCleary did not notify the ARL of the first application until minutes after entry of the stay, the first hearing was continued on his motion, Pesce never

paid a bond as ordered, and McCleary voluntarily dismissed most of Pesce's claims minutes before declining to participate in the second hearing. The court also noted the ARL's non-profit status. As discussed above, McCleary had the opportunity to argue the validity of Pesce's claims throughout the proceeding, and he had the opportunity to specifically contest the sanctions at a separate hearing. Therefore, the district court did not abuse its discretion in imposing sanctions of $11,080.50.

**V.     Conclusion**

The district court did not err or abuse its discretion in reassigning Pesce's first application or in dismissing her second application. The district court also did not err or abuse its discretion in holding a hearing after she filed a motion to dismiss and notices of appeal. Finally, the district court did not abuse its discretion in imposing sanctions against McCleary for his actions in the proceeding.

**AFFIRMED ON APPEAL.  WRIT ANNULLED.**